**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CAO GROUP, INC. | |
| Plaintiff, | Case No. 1:24-cv-00901 |
| v. | JURY TRIAL DEMANDED |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

## <u>VERIFIED FIRST AMENDED COMPLAINT</u>

Plaintiff CAO Group, Inc. ("Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Amended Schedule A (collectively, "Defendants"), attached hereto, as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Patent Act, 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a)-(b) (exclusive patent claim jurisdiction), and 28 U.S.C. § 1331 (original federal question jurisdiction).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Amended Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products which infringe Plaintiff's patented inventions, as described below, (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

## II. INTRODUCTION

3. Plaintiff filed this case to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their infringing operation. Plaintiff is forced to file this action to combat Defendants' infringing of its patented invention, as well as to protect consumers from purchasing Unauthorized Products over the internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights because of Defendants' actions and therefore seeks injunctive and monetary relief.

### III.    THE PARTIES

4.    Plaintiff, CAO Group, Inc., is a Utah corporation with its principal place of business at 4628 West Skyhawk Drive, West Jordan, Utah 84084 and is the owner of the patents asserted in this action.

5.    Plaintiff is the owner of all right, title, and interest in ██████████████ ████████████████████████████████████████████████████████ (collectively, "Plaintiff's Patents"). True and correct copies of Plaintiff's Patents are attached hereto as **Exhibit 1**.

6.    The ████ Patent issued on ████████████. *See* **Exhibit 1**.

7.    The ████ Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

8.    Claim 1 of the ████ Patent reads

████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████

██████████████████████

██████████████████████████████████████████████

████████████████

█████████████████████████████████████████

███████████████████████████████████████

██████████

████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████. *See* **Exhibit 1**.

9.    The ███ Patent issued on ██████████. *See* **Exhibit 1**.

10.    The ███ Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

11.    Claim 1 of the ███ Patent reads

████████████████████████

████████████████████████████████████████████

██████████████████████████████



████████████████████████████████████████████████

████████ *See* **Exhibit 1**.

12.     The ███ Patent issued on ███████████ *See* **Exhibit 1**.

13.     The ███ Patent was and is valid and enforceable at all times relevant to this action and is entitled to a presumption of validity under 35. U.S.C. § 282.

14.     Claim 1 of the ███ Patent reads:

████████████████████████

████████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████████

██████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████ *See* **Exhibit 1**.

15.     Plaintiff researches, develops, and patents ground-breaking inventions and advancements in the fields of dentistry, oral hygiene, and LED, with more than 190 issued and published patent applications worldwide. Among these inventions is ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████ This ████████████████████████ has led to

Plaintiff filing for and having been issued numerous patents, including Plaintiff's Patents that are

at issue in this matter.

16.     Plaintiff developed a product line which embodies Plaintiff's Patents, under the

name ████████████████████ (collectively, "Plaintiff's Products"), exclusively

through its website (www.caogroup.com) and through its authorized distributor Henry Schein.

Plaintiff's aforementioned product line includes ████████████ for both in-home use by

patients and for use within dental offices.

17.     Plaintiff provides notice of its patent rights directly on the packaging of all of

Plaintiff's Products. True and correct copies of the packaging drawings for Plaintiff's Products,

and annotated copies of the packaging drawings for Plaintiff's Products with the notice of patent

rights marked, are attached hereto as **Exhibit 2**.

18.     Plaintiff lists each of Plaintiff's Patents on the packaging of all of Plaintiff's

Products and displays the URL to Plaintiff's website (www.caogroup.com/patents), where Plaintiff

displays a list of its products, and which patents those products embody. Plaintiff's Products are

listed as embodying Plaintiff's Patents. *See* **Exhibit 2** and Figures 1, 2, 3, and 4.



Figure 3 (Exhibit 2, Page 6)



Figure 4, Plaintiff's Website (www.caogroup.com/patents)

19.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Amended Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint.

## IV.    DEFENDANTS' UNLAWFUL CONDUCT

20.    The success of the Plaintiff's Products has resulted in significant infringement of Plaintiff's Patent. Because of this, Plaintiff has implemented an anti-infringement program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. True and correct copies of the screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 3**.

21.    The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 4**).

22.    Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id*. Additionally, it is estimated that the importation of counterfeit goods costs the United

States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id*.

23.     Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 5**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 6**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 6** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 6** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 5** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

24.     The very same concerns regarding anonymity, multi-storefront infringers, and slow and ineffective notice and takedown marketplace procedures impact Plaintiff's enforcement efforts when trying to assert its own patent rights.

25.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell and/or offer for sale Unauthorized Products to residents of Illinois.

26.     Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants use of Plaintiff's Patents, and none of the Defendants are authorized retailers of Plaintiff's Products.

27.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

28.     E- commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators

like Defendants to conceal their identities and the full scope and interworking of their infringing operation, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being infringing to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

30.     E- commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by intellectual property owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by intellectual property owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

31.     Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-

commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to plaintiffs.

32.     Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully infringed Plaintiff's Patents in connection with the use and/or manufacturing of Unauthorized Products and distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

33.     Defendants' unauthorized use and/or manufacturing of the invention claimed in Plaintiff's Patents in connection with the distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, loss of market share and erosion of Plaintiff's patent rights is irreparably harming Plaintiff.

**COUNT I**
**PATENT INFRINGEMENT (15 U.S.C. § 271) – THE ▮ PATENT**

34.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35.     As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold,

and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the ▉ Patent.

36.     As shown in the example claim chart attached as **Exhibit 7**, the products being sold by Defendants infringes at least Claim 1 of the ▉ Patent. The claim chart of **Exhibit 7** is illustrative only and is made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of the ▉ Patent.

37.     Specifically, Defendants have infringed and continue to infringe each and every claim of the ▉ Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff.

38.     Defendants have profited by their infringement of the ▉ Patent, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

39.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of the ▉ Patent in connection with the offering to sell, selling, or importing of products that infringe the ▉ Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

40.     Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

41.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the ▮ Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

42.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT II
## PATENT INFRINGEMENT (15 U.S.C. § 271) – THE ▮ PATENT

43.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

44.     As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the ▮ Patent.

45.     As shown in the example claim chart attached as **Exhibit 7**, the products being sold by Defendants infringes at least Claim 1 of the ▮ Patent. The claim chart of **Exhibit 7** is illustrative only and is made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although

the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of the ██ Patent.

46.     Specifically, Defendants have infringed and continue to infringe each and every claim of the ██ Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff.

47.     Defendants have profited by their infringement of the ██ Patent, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

48.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of the ██ Patent in connection with the offering to sell, selling, or importing of products that infringe the ██ Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

49.     Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

50.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the ██ Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

51.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

**COUNT III**
**PATENT INFRINGEMENT (15 U.S.C. § 271) – THE ██ PATENT**

52.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

53.     As shown, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the ██ Patent.

54.     As shown in the example claim chart attached as **Exhibit 7**, the products being sold by Defendants infringes at least Claim 1 of the ██ Patent. The claim chart of **Exhibit 7** is illustrative only and is made without the benefit of discovery or claim construction, and Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds. Although the claim chart only includes Claim 1, Plaintiff alleges that Defendants have infringed each and every claim of the ██ Patent.

55.     Specifically, Defendants have infringed and continue to infringe each and every claim of the ██ Patent by making, using, importing, selling, and/or offering to sell their infringing products in the United States without authorization or license from Plaintiff.

56.     Defendants have profited by their infringement of the ██ Patent, and Plaintiff has suffered actual harm as a result of Defendants' infringement.

57.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary and other damages in an amount to be determined. Defendants' infringement of the ▇ Patent in connection with the offering to sell, selling, or importing of products that infringe the ▇ Patent, including such acts into the State of Illinois, is irreparably harming Plaintiff. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented inventions as well as the lost sales and loss of repeat sales stemming from the infringing acts.

58.     Defendants' infringement has been and continues to be willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

59.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the ▇ Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and erosion of patent rights.

60.     Plaintiff is entitled to recover damages adequate to compensate for the infringement, pursuant to 35 U.S.C. § 284, in no event less than a reasonable royalty.

## COUNT IV
## UNJUST ENRICHMENT – ILLINOIS STATE COMMON LAW

61.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

62.     Plaintiff's spent substantial time, money, and resources in development of the invention embodied in Plaintiff's Patents.

63.     Plaintiff's Patents consist of a unique ███████████ which greatly improves upon ████████ technology.

64.     Plaintiff also spent substantial time, money, and resources in the development of Plaintiff's Products, including selling Plaintiff's Products directly to consumers and through a distributor.

65.     Defendants traded upon Plaintiff's good will, reputation, research, and development by selling products which infringed upon Plaintiff's Patents.

66.     Defendants, by selling Unauthorized Products, eroded Plaintiff's market share in the dental and oral hygiene markets.

67.     Unauthorized Products include the unique ████████ components disclosed in Plaintiff's Patents.

68.     Defendants knew or should have known that the Unauthorized Products they were selling infringed upon Plaintiff's Patents and by selling those products they were eroding Plaintiff's market share and trading upon its good will, reputation, research, and development.

69.     Defendants, by offering for sale and selling Unauthorized Products, improved their own good will and market share by trading upon the good will, reputation, research, and development of Plaintiff.

70.     On information and belief, Defendants have sold Unauthorized Products, further eroding Plaintiff's market share and trading upon its good will, reputation, research, and development of Plaintiff.

71.     Plaintiff has never received any relief for the erosion to its market share or any compensation from Defendants for their use of Plaintiff's good will, reputation, research, and development.

72.     Defendants have been unjustly enriched because they have denied Plaintiff access to customers it would have otherwise had by participating in what should have been Plaintiff's exclusive market by selling products directly to consumers, products which infringed Plaintiff's Patents, and competing against Plaintiff's in the dental and oral hygiene markets.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.   Making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use any products that infringe upon Plaintiff's Patents; and

   b.   Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's Patents.

2)     Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, such as Amazon, eBay, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patents.

3)     That Judgment be entered against Defendants finding that they have infringed upon Plaintiff's Patents.

4)     That Judgment be entered against Defendants finding that infringement of Plaintiff's Patents has been willful.

5)     That Plaintiff be awarded damages for such infringement in an amount to be proven at trial, in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with interests and costs.

6)     That Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful infringement of Plaintiff's Patents.

7)     A finding that this case is exceptional under 35 U.S.C. § 285.

8)     A finding that Defendants were unjustly enriched.

9)     That Plaintiff be awarded its reasonable attorneys' fees and costs.

10)    Award any and all other relief that this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 12, 2024                    Respectfully submitted,

                                            /s/Edward L. Bishop
                                            Edward L. Bishop
                                            ebishop@bdl-iplaw.com
                                            Nicholas S. Lee
                                            nlee@bdl-iplaw.com
                                            Benjamin A. Campbell
                                            bcampbell@bdl-iplaw.com
                                            Sameeul Haque
                                            shaque@bdl-iplaw.com
                                            BISHOP DIEHL & LEE, LTD.
                                            1475 E. Woodfield Road, Suite 800
                                            Schaumburg, IL 60173
                                            Tel.:    (847) 969-9123
                                            Fax:     (847) 969-9124

                                            *Counsel for Plaintiff, CAO Group, Inc.*

## <u>VERIFICATION</u>

I, Dr. Densen Cao, hereby certify as follows:

1.      I am the founder and Chief Executive Officer for CAO Group, Inc. As such, I am authorized to make this Verification on CAO Group, Inc.'s behalf.

2.      I have read the foregoing Verified First Amended Complaint and, based on my personal knowledge and my knowledge of information reported to me by subordinates and colleagues who report to me, the factual allegations contained in the Verified First Amended Complaint are true.

3.      I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed in West Jordan, Utah on February 12th, 2024

_____
Dr. Densen Cao
CEO
CAO Group, Inc.